ANTHONY JOHN SHIPPOLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shippole v. Commissioner
Docket No. 6730-75.
United States Tax Court
T.C. Memo 1976-378; 1976 Tax Ct. Memo LEXIS 25; 35 T.C.M. (CCH) 1704; T.C.M. (RIA) 760378; December 7, 1976, Filed Anthony John Shippole, pro se. Thomas P. Dougherty, Jr., for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax as follows: Year
Deficiency
1972
$730.96
1973
464.40
Afteracertain concessions, the only issue for decision is whether petitioner is entitled to use the tax rates specified for "unmarried individuals" under section 1(c), I.R.C. 1954, or must use the rates applied to "married individuals filing separate returns" under section 1(d). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Anthony John Shippole, petitioner *28 herein, resided in Worcester, Massachusetts, at the time this petition was filed. He filed Federal individual income tax returns for the calendar years 1972 and 1973. From January 1, 1972, until August, 1972, petitioner resided with his wife, Virgina Shippole ("Virginia"), and their minor son, Joseph. During that period, Virginia earned approximately $500 from part-time employment; otherwise, petitioner provided the entire support for himself, his wife, and their son. In August, 1972, Virginia deserted petitioner, taking Joseph with her. At no time subsequent to August, 1972, did Virginia or Joseph live with petitioner, nor did petitioner even know their whereabouts. Petitioner obtained a divorce from Virginia in December, 1975, on the grounds of desertion. At all times during the two years here in issue, petitioner and Virginia were legally married and were not separated pursuant to a decree of separate maintenance. On his Federal income tax returns for 1972 and 1973, petitioner calculated his tax using the rates specified by section 1(b), I.R.C. 1954, for "Heads of Households", but now, conceding that he is not entitled to use such rates, he claims that he should be allowed *29 to calculate his tax at the rates specified for unmarried individuals by section 1(c). Respondent recalculated the tax using the rates specified by section 1(d) for married individuals filing separate returns. Petitioner could not file a joint return under section 6013 for either of the years here in issue because he did not know the whereabouts of his wife and therefore could not obtain her signature on such a joint return. See section 6013, I.R.C. 1954; section 1.6061-1, Income Tax Regs.
OPINION Section 1 of the Internal Revenue Code imposes a tax on the income of individuals, with the rate of tax varying according both to total taxable income and to the marital/family status of the (taxpayers). Section 1(b) specifies rates for "Heads of Households", which are defined by section 2(b)(1) as unmarried individuals who maintain households for certain qualifying dependents. Section 1(c) specifies rates for unmarried individuals (other than heads of households and surviving spouses). For purposes of both subsections, an individual is considered married if, on the last day of his taxable year, he is legally married under local law and is not legally separated *30 from his spouse under a decree of divorce or of separate maintenance. See sections 143(a), 2(b)(2)(B). Since petitioner was legally married, and not legally separated, on the last day of each of the years here in issue, he is not entitled to the benefits of the rates applicable to "Heads of Households" or to unmarried individuals. [1]
As a married individual, petitioner is required to calculate his tax either as a married individual filing a joint return with his spouse, under section 1(a), or as a married individual filing separately, under section 1(d). The crux of petitioner's problem is that he could not, even if he had wanted to, have filed a joint return with his spouse, for the simple reason that she had deserted him. See sections 6013, 6061, I.R.C. 1954. He is therefore relegated to the higher rates of tax imposed on married individuals filing separately. Congress has not been unaware of the dilemma faced by deserted spouses who cannot file joint returns. In 1969, it added a new section 143(b), which provides that *31 certain deserted spouses shall be treated as unmarried for purposes of the standard deduction allowed by section 141, and the tax rates imposed by section 1. See also section 2(c). The avowed purpose of the new section was to ease the plight of deserted individuals who must maintain their households alone, but who are nonetheless, under the tax laws, considered to be still married. H. Rept. No. 413, 91st Cong., 1st Sess. 207 (1969); S. Rept. No. 552, 91st Cong., 1st Sess. 259 (1969). Unfortunately for petitioner, Congress limited the benefits of section 143(b) to deserted spouses who maintain, as their homes, households which constitute for more than one-half of the taxable year the principle place of abode of a qualified dependent. Furthermore, Congress required that such households not include the deserting spouse at any time during the taxable year. Petitioner's wife lived in his household for part of 1972, and during 1973 petitioner did not have any dependents, in his household or otherwise. Petitioner therefore cannot claim the benefits of section 143(b) for either of the years in issue. We sympathize with petitioner's dilemma in these years before he obtained a final *32 divorce, but many taxpayers suffer from the web of tax consequences which endure throughout the unravelling of an unsuccessful marriage. Cf. John A. Bayless,61 T.C. 394; Westley Holmes,T.C. Memo. 1971-328. This Court has no power to alter the explicit mandate of the statute. See, e.g., Emilie Furnish Funk,29 T.C. 279, 297, remanded on another ground, 262 F. 2d 727 (C.A. 9). To take into account a possible credit of some $279 allegedly paid by petitioner during the course of the audit which may not have been reflected in the determination of deficiency, Decision will be entered under Rule 155. Footnotes
1. Furthermore, at least as to 1973, petitioner did not maintain a household for any qualifying dependents within the requirements of section 2(b)(1).↩